PEOPLE v ELSTON

Docket No. 114906. Argued May 3, 2000 (Calendar No. 3). Decided .
    July 25, 2000.

    Chad L. Elston was convicted by a jury in the Eaton Circuit Court, G.
    Michael Hocking, J., of first-degree criminal sexual conduct. The
    court had denied a defense request to suppress evidence of sperm
    fragments found in the victim that neither party had learned about
    until the first day of trial. The Court of Appeals, CAVANAGH, P.J., and
    MARKMAN and SMOLENSKI, JJ., reversed in an unpublished opinion per
    curiam, on the ground that the circuit court had erred in failing to
    grant a continuance sua sponte following a discovery violation
    under MCR 6.201 and that the error was not harmless (Docket No.
    199557). The people appeal.

    In an opinion by Justice CORRIGAN, joined by Chief Justice
WEAVER, and Justices TAYLOR and YOUNG, the Supreme Court *held*:

    The trial court did not have a duty to grant a continuance on its
own motion in response to newly discovered evidence. The defend-
ant is not otherwise entitled to a new trial on the basis of the
alleged discovery violation.

    1. The Court of Appeals found error in the prosecutor's failure to
make the evidence available to the defendant immediately after its
surprising trial-day disclosure. This conclusion was not warranted,
however, on the basis of the defendant's argument or the record on
appeal. The defendant did not argue in the trial court or in the
Court of Appeals that the prosecution had violated MCR 6.201 by
failing to turn over the evidence. Instead, he argued only that the
trial court should have suppressed a witness' testimony regarding
the sperm fragments because it came as a surprise. To the extent
the defendant asserted a discovery violation in the Court of
Appeals, his argument focused on the evidence of sperm in general,
rather than on the sample or laboratory report in particular.

    2. The record did not support the Court of Appeals finding that
the defendant was denied access to the evidence. As the appellant
in the Court of Appeals, the defendant bore the burden of furnish-
ing the reviewing court with a record to verify the factual basis of
any argument on which reversal was predicated. But in his brief,

the defendant did not point to anything in the lower court record that would establish that the prosecutor failed to provide the items in question to him after their discovery. The defendant also did not seek to expand the record in this respect by requesting an evidentiary hearing. Accordingly, the Court of Appeals erred in reversing the defendant's conviction on that basis.

3. Whatever the reason for defense counsel's lack of knowledge before trial, it surely constituted reasonable grounds for seeking a continuance at trial. However, the defendant elected to seek suppression of the evidence on the ground that it came as a surprise to him and not to seek a continuance. Even if the defendant had established an inadvertent discovery violation, a continuance would have alleviated any harm to the defendant's case by allowing both parties to prepare for the evidence of sperm without requiring the exclusion of relevant evidence. Under such circumstances, the more severe remedy of suppression would not have been appropriate.

4. In the absence of a request for a continuance, a trial court should assume that a party does not desire a continuance. Given this clear rule, the trial court cannot be faulted for failing to grant a continuance on its own motion.

5. A prosecutorial violation of MCR 6.201(A) based on a failure to disclose the laboratory report or evidence sample would have been nonconstitutional in nature. Likewise, any error attributable to the trial court for failing to remedy a discovery violation by granting a continuance would also have been nonconstitutional. In order to overcome the presumption that a preserved nonconstitutional error is harmless, a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative. An error is "outcome determinative" if it undermined the reliability of the verdict. In this case, given the extremely strong evidence of defendant's guilt and the dearth of evidence favorable to defendant, we are confident that the late discovery of the evidence of sperm did not undermine the reliability of the verdict.

Vacated and remanded.

Justice KELLY, joined by Justice CAVANAGH, concurring in part and dissenting in part, stated that while a violation of the discovery rules did occur, the trial court's error in not providing some sort of remedy for the defendant for the discovery violations perpetrated by the prosecution was harmless beyond a reasonable doubt.

A discovery violation can result in constitutional error when it violates a defendant's right to due process. Defendants have a due

process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment. Material has been interpreted to mean exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. The test is whether it contains information that probably would have changed the outcome of the trial. A constitutional due process violation can occur when a prosecutor fails to disclose inculpatory evidence.

The prosecutor violated MCR 6.201(A)(3), with respect to expert witnesses, and MCR 6.201(A)(6), regarding the physical sample taken from the victim's body, by failing to turn over to the defendant the report prepared by the hospital laboratory and the physical sample. While the error was of constitutional proportion and was preserved by the defendant's motion to suppress, the defendant has not raised those issues. Instead, he argues that the error was outcome determinative under *People v Lukity*, 460 Mich 484 (1999). However, even applying the higher standard for preserved constitutional error, the trial court's error in not granting some relief to defendant was harmless. The defendant did not demonstrate that the physical evidence or the laboratory report would have been exculpatory, and the facts support a conviction for CSC-I.

Justice MARKMAN took no part in the decision of this case.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *Jeffrey L. Sauter,* Prosecuting Attorney, and *William M. Worden,* Senior Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Deborah Winfrey Keene*) for defendant-appellee.

CORRIGAN, J. We granted the prosecution's application for leave to appeal to decide whether the trial court had a duty to grant a continuance on its own motion in response to newly discovered evidence. We conclude that it did not, and that defendant is not otherwise entitled to a new trial on the basis of the alleged discovery violations. Accordingly, we vacate the judgment of the Court of Appeals, which reversed

defendant's jury trial conviction of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), and remand for consideration of defendant's remaining appellate issues.

### I. FACTUAL BACKGROUND

Defendant lived with his girlfriend and her two-year-old son. Defendant and the young child were taking a bath together, on defendant's suggestion, when the mother heard her son screaming. When she entered the bathroom, her son was crying and shaking. Neither defendant nor the child were dressed. Defendant explained that the boy fell and almost hit his head. When the mother noticed some blood between her son's buttocks, she asked defendant to drive her and the child to the hospital. Defendant refused and suggested that they wait until the next day to see if the boy's injuries improved.

The child's mother then enlisted the aid of her second cousin, who picked them up and drove them to the hospital. When the cousin first arrived at the house she observed that the child's bottom was swollen, bruised, and covered with dried blood. As they drove to the hospital, the child was saying "Chad butt." He said the same thing at the hospital when he saw his grandmother. In the emergency room, Scott Randall, D.O., examined the boy. Dr. Randall observed swelling, redness, bruising, and two fissures, or tears, around the anus. Concerned that the child may have been the victim of sexual abuse, Dr. Randall obtained a "criminal sexual conduct kit" and contacted the local police department.

When questioned by the police immediately after the incident, defendant denied any improper sexual conduct with the boy. Defendant speculated that the child's injuries may have been caused by falling onto the spout of the bathtub. In a written statement, defendant explained that the child slipped in the tub as he was standing up and attempting to put his toys away. A few months later, the police questioned defendant a second time. In his second police interview, defendant changed his story and explained that he had attempted to place his smallest finger into the child's anus. When the officer opined that a penetration by just the tip of defendant's finger was inconsistent with the boy's injuries, defendant explained that he placed his finger into the child's rectum up to his second knuckle and made a "c" motion.

Dr. Randall opined that the child's injuries were not consistent with a fall or with the insertion of a finger, but that they were consistent with penetration by an adult penis. In collecting evidence for the criminal sexual conduct kit, Dr. Randall performed two dry swabs of the boy's rectum. Tests of these dry swabs conducted at the Michigan State Police Laboratory revealed no evidence of semen. In addition to the dry swabs, Dr. Randall took two wet swabs. Dr. Randall explained that a wet swab, or "wet prep," would be more effective than a dry swab for obtaining sperm from dry areas such as the rectum. When Dr. Randall later looked at the results of the wet prep under a microscope, he observed two sperm fragments.

Defendant did not testify or present any proofs. The jury found defendant guilty of first-degree criminal sexual conduct and the trial court sentenced

defendant to a term of fifty to seventy-five years imprisonment.

### II. DEFENDANT'S MOTION TO SUPPRESS

The issues before the Court involve Dr. Randall's observation of sperm fragments in the wet swab sample taken from the victim. Before trial, Dr. Randall had not told anyone involved in the criminal investigation that he had observed sperm fragments under a microscope. Nor did he tell anyone that he had obtained a laboratory test on the wet swab sample.

Defendant filed a discovery request in which he sought material available under MCR 6.201, including exculpatory evidence, documents, reports produced by or for expert witnesses, descriptions of physical evidence to be introduced at trial, and the opportunity to inspect physical evidence. In response to this request, the prosecution furnished defendant with a copy of the emergency room report signed by Dr. Randall. The emergency room report contained a notation by Dr. Randall explaining that he had discussed the case with another physician who "suggested wet prep/ GC/ Chlamydia Culture and attemt [sic] for motile sperm slide which were obtained." Also on the emergency room report, within a section entitled "present medications," appeared the words "Wet prep, GC, Chlamydia Culture, Motile Sperm." Although Dr. Randall had testified at defendant's preliminary examination, neither the prosecution nor the defense questioned him about the meaning of the notations on the emergency room report or about whether he had observed any evidence of semen or sperm on the victim. This fact suggests that neither

party paid particular attention to the "wet prep" and "motile sperm" notations on the emergency room report.

On the morning of the first day of defendant's two-day trial, Dr. Randall informed the prosecutor, for the first time, that he had observed sperm fragments recovered from the victim.[1] Dr. Randall and the prosecutor also reviewed the results of laboratory work that had been performed on the wet swab sample.[2] Dr. Randall had seen the results of the wet swab laboratory report for the first time only three days earlier. As soon as the prosecutor learned of Dr. Randall's observations of sperm, he immediately informed defense counsel. Until Dr. Randall's disclosure, neither party had known of any evidence indicating the presence of sperm. Defense counsel conceded at trial and again at sentencing that the prosecutor had not been advised of the presence of sperm until the first day of trial.

At the beginning of the second day of trial, the parties informed the trial court of Dr. Randall's disclosure, at which time defendant moved to suppress Dr. Randall's proposed testimony regarding the sperm fragments. Defense counsel argued that it would be unfair to allow Dr. Randall to testify about the presence of sperm because defendant was not made

---

[1] It is not uncommon in the trial of a case for a witness, especially one new to the criminal justice system, to reveal information not previously disclosed. Before this case, Dr. Randall had never testified as a medical expert. Nothing in the record indicates that Dr. Randall's late revelation was made in anything but good faith.

[2] The contents of the wet swab laboratory report have never been made part of the record at trial or on appeal. Defendant does not suggest that the laboratory report did anything more than confirm the accuracy of Dr. Randall's observations.

aware of that evidence before trial. The trial court denied defendant's motion to suppress, reasoning that defendant was put "on notice" of the possibility that Dr. Randall had recovered sperm from the victim by the notations on the emergency room report referencing "wet prep" and "motile sperm." The trial court further explained that Dr. Randall had no duty to volunteer the information at the preliminary examination in the absence of a specific question, and that there was no evidence that Dr. Randall had answered any question falsely. Although neither party had actual notice before trial of the presence of sperm, neither requested a continuance on the record.

### III. THE COURT OF APPEALS OPINION

On appeal to the Court of Appeals, defendant argued that the trial court abused its discretion in denying his motion to suppress the evidence of sperm that neither party learned about until the first day of trial. Seeing the issue in a different light, the Court of Appeals reversed on the ground that the prosecutor committed specific discovery violations when it failed to make the wet swab laboratory report and the wet swab sample available to defendant immediately after Dr. Randall's surprise disclosure. In reaching this conclusion, the Court of Appeals first rejected the trial court's conclusion that the writing on the emergency room report put defendant "on notice" of the possible discovery of sperm. It explained that, when viewed in context, there was no reasonable way that the rather obscure words on the emergency report could have afforded defendant notice that evidence of sperm had been discovered. The Court of Appeals then con-

cluded that the wet swab laboratory report was discoverable under MCR 6.201(A)(3), as a report prepared for an expert witness, and that the wet swab sample was discoverable under MCR 6.201(A)(6), as tangible physical evidence.

After finding the discovery violations, the Court of Appeals rejected the prosecutor's argument that, in the absence of a specific request for a continuance, the trial court was excused from remedying the potential prejudice. The panel explained that, although the trial court was not obligated to exclude the evidence, some remedy, "such as a continuance and the opportunity to examine the evidence regarding the presence of sperm," was required. The Court of Appeals next explained that defendant's case was prejudiced by the discovery errors because they left him without an opportunity to "scientifically evaluate" the wet swabs, examine the laboratory report for inconsistencies, or to "intelligently" cross-examine Dr. Randall. In particular, the panel opined that defendant could not be expected to be prepared to meet Dr. Randall's testimony on such short notice without access to the laboratory report or physical evidence itself. Finally, the Court of Appeals stated that the errors were not harmless.

IV. DISCOVERY ISSUES

The Court of Appeals found error in the prosecutor's failure to make the wet swab laboratory report and the wet swab sample itself available to defendant immediately after Dr. Randall's surprising trial-day disclosure regarding the presence of sperm.

This conclusion was not warranted on the basis of defendant's argument or the record on appeal.

Defendant did not argue in the trial court or in the Court of Appeals that the prosecution had violated MCR 6.201 by failing to turn over the wet swab laboratory report or wet swab sample. Instead, he argued only that the trial court should have suppressed Dr. Randall's testimony regarding the sperm fragments because it came as a "surprise." To the extent defendant complained of a discovery violation in the Court of Appeals, his argument focused on the "evidence of sperm" in general, rather than on the sample or laboratory report in particular. Defendant asserted that the prosecution had a duty to notify him of the evidence of sperm in a timely manner in order to allow him a fair chance to prepare his defense on the basis of full and accurate information. Conceding that the evidence of sperm was not technically "favorable" to him under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), he nevertheless suggested that its "timely" disclosure might have somehow bolstered a theory of the defense.[3] Defendant also contended that, at a minimum, the trial court "should have *sua sponte* ordered a continuance, in order to give the defense a reasonable opportunity to prepare to confront the late testimony." Because defendant never cited MCR 6.201, and never asserted that the prosecution was specifically obliged to turn over the wet swab laboratory report or wet swab

---

[3] For instance, defendant suggested that, if he had been made aware of the presence of sperm before trial, then "he could have had an expert examine the alleged sperm specimen" to look for a DNA match, or he could have "prepared to challenge the procedures under which any lab tests were performed."

sample, the Court of Appeals significantly expanded defendant's argument when it reversed his conviction on that basis.

More importantly, the record did not support the Court of Appeals "finding" that defendant was denied access to the wet swab laboratory report and the wet swab sample at any time after Dr. Randall's disclosure. It is undisputed that neither party had actual notice of the evidence of sperm until the first day of trial. On that day, in court, Dr. Randall and the prosecutor "reviewed" the results of the wet swab laboratory test. The prosecutor then immediately advised defense counsel of the new information. Defendant's only objection at trial, made the following day, went to his general lack of knowledge regarding the evidence of sperm before Dr. Randall's disclosure. If there was a copy of the wet swab laboratory report in court, a question the Court of Appeals could not have answered with confidence on the basis of the record before it, there was no reason to believe that defense counsel did not have an equal opportunity to inspect it.[4] The same can be said for the wet swab sample.

---

[4] While acknowledging that, strictly speaking, the record does not verify that the prosecutor denied defendant access to the wet swab laboratory report on the first day of trial, our concurring and dissenting colleague suggests that "an inference can be drawn from the record that defense counsel never received the report." *Post* at 768, n 2. We disagree that such an inference can be drawn from the fact that defense counsel never affirmatively acknowledged receiving the wet swab laboratory report. We also note that her quotation from the separate record is taken out of context. The discussion on that page involved the prosecutor's argument that defendant was put "on notice" of the possible presence of sperm by the prosecution's pretrial disclosure of the emergency room report. Defense counsel's comments reveal only that the emergency room report in the trial judge's hand was the same report that had been disclosed to defense counsel before trial. The record of this exchange has no

As the appellant below, defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated. *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993);  cf. *People v Lee*, 391 Mich 618, 626-627; 218 NW2d 655 (1974); *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). In his brief below, defendant did not point to anything in the lower court record that would establish that the prosecutor failed to provide the items in question to defendant after Dr. Randall's disclosure. Undoubtedly, this occurred in part because defendant never argued that the prosecutor erred in failing to provide these items. Defendant also did not seek to expand the record in this respect by requesting an evidentiary hearing. The record provided no factual basis upon which to conclude that the prosecutor had failed to make the wet swab laboratory report and the wet swab sample available to defendant immediately after Dr. Randall's disclosure. Accordingly, the Court of Appeals erred in reversing defendant's conviction on that basis.

Apart from the wet swab sample and the wet swab laboratory report, the only other "evidence of sperm" not disclosed to defendant before trial was Dr. Randall's own personal observations. Clearly, this information was outside the scope of discovery. Because Dr. Randall did not make notes of his observations, they were not subject to mandatory disclosure under MCR 6.201(A)(3). Dr. Randall's personal observations of sperm were not otherwise discoverable because

---

bearing on the factual question whether defense counsel was denied access to the wet swab laboratory report on the first day of trial.

evidence of sperm recovered from the victim was not
"exculpatory" under MCR 6.201(B)(1), or "favorable
to an accused" under *Brady, supra.*

### V. THE DUTY TO SEEK A CONTINUANCE

Although the Court of Appeals erred in finding spe-
cific discovery violations in this case, the fact remains
that neither defendant nor the prosecutor knew of the
evidence of sperm until the morning of the first day
of trial. Defendant might have learned of this evi-
dence sooner if defense counsel had asked Dr. Ran-
dall more probing questions at the preliminary exami-
nation, or if the prosecutor had discovered the exis-
tence of the wet swab laboratory report before the
first day of trial.[5] Whatever the reason for defense
counsel's lack of knowledge before trial, it surely con-
stituted reasonable grounds for seeking a continuance
at trial. Of course, defense counsel may also have had
sound reasons to avoid any delay. Defense counsel's
strategy at trial was to challenge Dr. Randall's credi-
bility by arguing that he lacked experience. The pros-
ecutor argues that a delay would have allowed it to
endorse and call the laboratory technicians who pre-
pared the wet swab sample laboratory report. Testi-
mony from the laboratory technicians confirming that
the wet swab sample contained sperm fragments
would have undermined defendant's argument regard-
ing Dr. Randall's lack of experience. In any event,
faced with the dilemma of Dr. Randall's trial-day dis-

---

[5] We reiterate that defendant did not argue to the Court of Appeals, and
the Court of Appeals did not find, that the prosecutor breached a duty
under MCR 6.201(A)(3) to disclose the existence of the wet swab labora-
tory report before his actual discovery of the existence of that report.

closure, defense counsel elected to seek suppression of the evidence on the ground that it came as a "surprise" to him, and not to seek a continuance.

The Court of Appeals conclusion that suppression of Dr. Randall's testimony was unwarranted was correct. Because defendant failed to allege or establish a specific discovery violation, or any other sort of prosecutorial misconduct, the trial court lacked a basis upon which to punish the prosecutor by suppressing otherwise admissible evidence. Furthermore, even if defendant had established an inadvertent discovery violation, a continuance, had one been requested, would have alleviated any harm to defendant's case by allowing both parties to prepare for the evidence of sperm without requiring the exclusion of relevant evidence. Under such circumstances, the more severe remedy of suppression would not have been appropriate. See *People v Clark*, 164 Mich App 224, 230; 416 NW2d 390 (1987).

We reject defendant's alternative argument below that, in lieu of granting defendant's motion to suppress, the trial court "should have *sua sponte* ordered a continuance, in order to give the defense a reasonable opportunity to prepare to confront the late testimony." Although defense counsel had ample reason to seek a continuance at trial, he elected not to do so. The longstanding rule of this state is that, in the absence of a request for a continuance, a trial court should assume that a party does not desire a continuance. See *People v Lee*, 307 Mich 743, 750; 12 NW2d 418 (1943); *People v Ranney*, 153 Mich 293, 299; 116 NW 999 (1908); *People v Kelly*, 186 Mich App 524, 527; 465 NW2d 569 (1990); *People v Kvam*, 160 Mich App

189, 200; 408 NW2d 71 (1987); *People v McLendon*, 51
Mich App 543, 546; 215 NW2d 742 (1974); *People v
Lakin*, 30 Mich App 441, 445; 186 NW2d 867 (1971).
Given this clear rule, the trial court cannot be faulted
for failing to grant a continuance on its own motion.
This rule makes sense because (1) it acknowledges
the fact that the parties may have strategic reasons
for wishing to proceed, and (2) a contrary rule would
place trial courts in the difficult position of having to
order unrequested delays as a prophylactic measure
against reversal.

### VI. HARMLESS ERROR ANALYSIS

Even if Dr. Randall's testimony regarding the pres-
ence of sperm fragments in the "wet prep" had been
tainted by a prosecutorial failure to disclose the labo-
ratory report or wet swab sample, or by the trial
court's failure to grant a continuance on its own
motion, any such error would have been harmless.
The applicable standard of harmless error review
depends on whether the error in question was non-
constitutional or constitutional in nature. *People v
Carines*, 460 Mich 750, 773-774; 597 NW2d 130 (1999).
There is no general constitutional right to discovery
in a criminal case. *People v Stanaway*, 446 Mich 643,
664; 521 NW2d 557 (1994), citing *Weatherford v Bur-
sey*, 429 US 545, 559; 97 S Ct 837; 51 L Ed 2d 30
(1977). Accordingly, a prosecutorial violation of MCR
6.201(A) based on a failure to disclose the laboratory
report or wet swab sample would have been noncon-

stitutional in nature.[6] Likewise, any error attributable
to the trial court for failing to remedy a discovery vio-
lation by granting a continuance would also have
been nonconstitutional in nature.

In order to overcome the presumption that a pre-
served nonconstitutional error is harmless, a defend-
ant must persuade the reviewing court that it is more
probable than not that the error in question was out-
come determinative. *People v Lukity*, 460 Mich 484,
495-496; 596 NW2d 607 (1999). An error is deemed to
have been "outcome determinative" if it undermined
the reliability of the verdict. See *People v Snyder*, 462
Mich 38, 45; 609 NW2d 831 (2000), citing *Lukity*,
*supra* at 495-496. In making this determination, the
reviewing court should focus on the nature of the
error in light of the weight and strength of the
untainted evidence. See *Lukity, supra* at 495; *People
v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). In
this case, there was overwhelming evidence of
defendant's guilt apart from the evidence of sperm.
The victim's mother testified that defendant was the
only person present with the victim when the injury
occurred. The medical evidence showed that the vic-
tim's injury was consistent with penetration, but not
consistent with a fall. The most important evidence,
however, was the fact that, after initially attempting
to deflect blame away from himself, defendant admit-
ted to the police that he engaged in an intentional dig-
ital penetration of the victim. This fact alone would

---

[6] As our concurring and dissenting colleague notes, a violation of
*Brady, supra,* would be an error of constitutional magnitude. We agree
with her observation that no *Brady* violation could have occurred in this
case because the evidence of sperm recovered from the victim was not
"favorable to the accused."

support a conviction of the crime charged. Given the extremely strong evidence of defendant's guilt and the dearth of evidence favorable to defendant, we are confident that the late discovery of the evidence of sperm did not undermine the reliability of the verdict.[7]

For these reasons, we conclude that the Court of Appeals erred in reversing defendant's convictions. We vacate the opinion of the Court of Appeals and remand to the Court of Appeals for consideration of defendant's remaining appellate issues.

WEAVER, C.J., and TAYLOR and YOUNG, JJ., concurred with CORRIGAN, J.

KELLY, J. (*concurring in part and dissenting in part*). I concur with parts I, II, and III of the majority's opinion. I disagree, however, with the majority's conclusion that the Court of Appeals erred in finding a discovery violation.

I

The majority holds that the Court of Appeals erred in finding a discovery violation on the basis of facts the majority believes were not supported in the record. I find no error. The prosecutor violated the rules by failing to turn over to defendant the report prepared by the hospital laboratory and the physical sample taken from the victim.

The Michigan Court Rules, at MCR 6.201(A)(3), state with respect to expert witnesses:

---

[7] We note that the Court of Appeals conducted its harmless error analysis without the benefit of this Court's opinion in *Lukity, supra*.

> A party upon request must provide all other par-
> ties: . . . any report of any kind produced by or for an
> expert witness whom the party intends to call at trial[.]

In this case, the Court of Appeals appropriately classi-
fied Dr. Randall as an expert witness. See *People v
Mikula*, 84 Mich App 108; 269 NW2d 195 (1978).[1]
Thus, MCR 6.201(A)(3) applied to reports produced
by or for Dr. Randall.

Dr. Randall testified that he observed sperm frag-
ments under a microscope on a slide prepared from
the wet swab sample taken from the victim's rectum.
He also testified that he sent the sample to the hospi-
tal laboratory for tests to be performed on it. The lab-
oratory prepared a report which Dr. Randall reviewed
before testifying at trial. Thus, the laboratory report
was one produced for Dr. Randall, an expert witness
whom the prosecution intended to call at trial.

Once becoming aware of the report on the morning
before the first day of trial, the prosecutor should
have turned it over to defendant, as required by MCR
6.201(A)(3). The prosecutor did not do so, but merely
advised defense counsel of its existence. Thus, the
failure of the prosecution to provide the laboratory
report to defense counsel constituted a violation of
MCR 6.201(A)(3).[2]

---

[1] In *Mikula*, the examining doctor testified about the condition of the
girl's genital area and opined that the condition was consistent with pene-
tration by an adult penis. *Id.* at 112. The Court of Appeals referred to the
testimony as *expert* medical testimony. *Id.* Similarly, here, Dr. Randall tes-
tified that the injuries he observed on the victim were consistent with
what an adult penis would cause.

[2] The majority asserts that the record does not disclose whether the
report was actually turned over to defense counsel. *Ante*, p 761, n 4. While
that is strictly accurate, an inference can be drawn from the record that
defense counsel never received the report.

A second violation of the discovery rules occurred when the prosecutor failed to turn over to defense counsel the physical sample taken from the victim's body. MCR 6.201(A)(6) states:

> a party upon request must provide all other parties: . . . a description of and an opportunity to inspect any tangible physical evidence that the party intends to introduce at trial.

Dr. Randall testified about what he observed when he examined the physical sample. Despite the fact that the physical sample was never introduced as evi-

---

Counsel stated that the prosecutor advised him that sperm was found in the sample taken from the victim. But he never stated that the prosecutor gave him the physical sample or a report identifying what was in the sample. Separate Record Tr at 16-17. The judge then obtained the emergency room report that was turned over to defense counsel, and the following exchange took place:

> *The Court*: Report? This is *the report* turned over to defense counsel?
> *[Prosecutor]*: Yes. You want the whole thing?
> *The Court*: No, let me—I know what I'm doing here. Just trust me. I'll—I'm asking him these questions for a particular reason. . . . Do—is this *the report* that you got . . . Mr. Robinson [defense counsel]?
> *[Defense Counsel]*: Yes, Your honor. [*Id.* (emphasis added).]

The majority contends that this exchange has no bearing on whether defense counsel was provided a copy of the laboratory report. It asserts that I have taken the quotation out of context. *Ante*, p 761, n 4.

One can deduce from the discussion that defense counsel received only one report from the prosecutor, that being the emergency room report. The parties and the judge refer to *the report* that defense counsel received in the singular. No mention is made of any other report being turned over to defense counsel.

I acknowledge that the discussion did not center on the laboratory report. My point is that it was a discussion in which one would expect the laboratory report would have been mentioned, had defense counsel received it. Thus, although not dispositive, it has some bearing on the question.

dence at trial, I believe that Dr. Randall's testimony implicated MCR 6.201(A)(6). His testimony brought into issue the tangible physical evidence and what it demonstrated. Accordingly, defendant should have had an opportunity to inspect the physical evidence as the court rule requires.[3]

II

I agree with the majority that the error was harmless. However, I reach that result by a different route. The majority quickly classifies any error that occurred here as nonconstitutional error because "[t]here is no general constitutional right to discovery in a criminal case." *Ante*, p 765, citing *People v Stanaway*, 446 Mich 643, 664; 521 NW2d 557 (1994). It goes on to find that the error was harmless, because defendant did not establish that, more probably than not, it was outcome determinative. *Ante*, p 766, citing *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

The majority's statement is much too broad, and it fails to recognize that a discovery violation can result in constitutional error when it violates a defendant's right to due process.

---

[3] A contrary finding will essentially render the court rule illusory by providing a loophole that permits avoidance of the disclosure of physical evidence. Rather than disclose the evidence, the prosecution can destroy it and simply call a witness to testify about what he saw when he inspected it, before it was destroyed. Accordingly, an important safeguard against perjured testimony will be lost.

This is especially relevant here, because we do not know if the physical evidence was actually exculpatory. It was never turned over, and the record does not indicate what happened to it.

> Defendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Carter*, 415 Mich 558, 593; 330 NW2d 314 (1982). Material has been interpreted to mean exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. *United States v Agurs*, 427 US 97, 104; 96 S Ct 2392; 49 L Ed 2d 342 (1976). The prosecution must turn over such evidence regardless of whether the defendant makes a request. *Id.* . . . The test for whether the material should have been provided . . . is "whether it contains information that probably would have changed the outcome of [the] trial." [*Stanaway, supra* at 666.]

However, in this case, defendant has not demonstrated that the physical evidence or the laboratory report would have been exculpatory. Thus, defendant is not able to establish constitutional error on the basis of the *Stanaway* test.

We have yet to address in a definitive manner the issue whether a constitutional due process violation can occur when a prosecutor fails to disclose inculpatory evidence.[4] However, in *People v Taylor*, 159 Mich

---

[4] The Court of Appeals has held that a prosecutor's failure to comply with discovery agreements and orders results in an unconstitutional denial of due process, even if the undisclosed evidence was inculpatory. See *People v Florinchi*, 84 Mich App 128; 269 NW2d 500 (1978); *People v Pace*, 102 Mich App 522; 302 NW2d 216 (1980); *People v Turner*, 120 Mich App 23; 328 NW2d 5 (1982). However, in *People v Taylor*, 159 Mich App 468, 471; 406 NW2d 859 (1987), the Court of Appeals purported to reverse its earlier decisions and held that prosecutorial violation of discovery agreements should not be "elevated to constitutional rank." The Court certified that its *Taylor* decision conflicted with its earlier decisions, yet we declined the opportunity to order further consideration of the issue. 428 Mich 913 (1987). Thus, the status of error that results from a prosecutor's failure to abide by discovery orders or agreements remains uncertain. See Mattis, *Stare decisis within Michigan's Court of Appeals: Precedential effect of its decisions on the Court itself and on Michigan trial courts*, 37

App 468; 406 NW2d 859 (1987), the Court of Appeals identified a test to use to determine the appropriate remedy to apply when a prosecutor fails to abide by a discovery order or agreement:

> The question . . . is first, whether the party's interest in preparing his own case or his opportunity to test the authenticity of his opponent's evidence has been prejudiced by a noncompliance with a discovery order or agreement, and second . . . what remedy may be appropriate giving due regard to the competing interests of the opposing party, the court, and the public. [*Id.* at 486-487.]

Here, the prosecutor's failure to turn over the physical sample to defendant prejudiced defendant's opportunity to test the sample and verify that sperm fragments were present. The prosecutor's failure to turn over the laboratory report resulted in defendant having no opportunity to compare the report with Dr. Randall's testimony and to search for inconsistencies. Thus, I agree with the Court of Appeals when it stated:

> We cannot expect a defendant and his attorney to be prepared to meet such critical physical evidence in less than one day and without access either to key reports or to the physical evidence itself. By its nature, such physical evidence is generally so persuasive to a jury that there is an obligation on the part of the prosecutor and the court to fairly share it with defendant. And not only was defendant entitled to have a fair chance to examine the evidence

---

Wayne L R 265, 291-294 (1991). However, we did reverse a defendant's conviction summarily and remand for a new trial in a case where a trial court erred by admitting letters written by a defendant. The prosecution had not disclosed the letters as required by a discovery order. *People v McPherson*, 419 Mich 951 (1984). We did not identify the error as a violation of due process, however.

against him, but the jury was entitled to make a decision
based on all of the evidence available.

With respect to the second prong of the *Taylor* test,
the trial court should have granted some remedy to
defendant on the basis of the discovery violation per-
petrated by the prosecution.[5] Suppression was an
option. However, the trial court should have ordered
the prosecution to turn over the laboratory report and
the physical sample to defendant. This would have
protected defendant's right to a fair trial, at least min-
imally, without implicating the competing interests of
the other parties.

I agree with the majority, however, that, absent a
request by defendant, the trial court was not obli-
gated to grant a continuance to defendant. See *People
v Blue*, 255 Mich 675, 679; 239 NW 361 (1931); *People
v Ranney*, 153 Mich 293, 299; 116 NW 999 (1908);
*People v Ecarius*, 124 Mich 616, 620; 83 NW 628
(1900).

While I would conclude that the error in this case
was of constitutional proportion and that it was pre-
served by defendant's motion to suppress,[6] defendant
has not raised those issues. Instead, he argues that
the error was outcome determinative under *Lukity*,

---

[5] The competing interests of the parties, the court, and the public,
include: (1) the prosecutor's interest in convicting criminals through the
use of all relevant and admissible evidence, (2) the defendant's due pro-
cess right to a fair trial, (3) the court's interest in expeditiously adminis-
tering justice, and (4) the public's interest in judicial integrity and the pro-
tection of society from criminals.

[6] I would find a constitutional error on the basis of the earlier Court of
Appeals decisions and our order in *McPherson, supra*. Preserved constitu-
tional error is analyzed under the harmless-beyond-a-reasonable-doubt
test. *People v Robinson*, 386 Mich 551; 194 NW2d 709 (1972). Reversal is
necessary if the error was prejudicial. *Id.* at 562.

*supra.* Even applying the higher standard for preserved constitutional error, I find that the trial court's error in not granting some relief to defendant was harmless.

Defendant was charged with first-degree criminal sexual conduct. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a) defines the offense:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in *sexual penetration* with another person and . . . [t]hat other person is under 13 years of age. [Emphasis added.]

Defendant admitted that he digitally penetrated the victim. Defendant's admission was recorded in a signed statement and admitted into evidence at trial. Thus, even absent testimony by Dr. Randall, defendant's admission of digital penetration sufficiently established the penetration element of first-degree sexual conduct.

Furthermore, the facts of this case support a conviction for CSC-I, only. Second-degree sexual conduct is defined in relevant part as "sexual contact" with someone under the age of thirteen. MCL 750.520c; MSA 28.788(3). There was sexual contact here, but the charge was based on penetration. The charge was not based merely on contact, touching, or fondling, and there is no evidence to support such a charge. The record demonstrates that defendant digitally penetrated the victim. There is nothing in it that would justify the jury finding defendant guilty of a lesser charge on the basis of improper sexual *contact* alone. Accordingly, I do not see how the alleged discovery violations could have caused the jury to convict

defendant of a higher charge than what they otherwise might have considered.

I conclude that the trial court's error in not providing some sort of remedy to defendant for the discovery violations perpetrated by the prosecution was harmless beyond a reasonable doubt. Therefore, I concur with the majority's decision to reverse the judgment of the Court of Appeals.

Cavanagh, J., concurred with Kelly, J.

Markman, J., took no part in the decision of this case.