*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

NIKKOLAS GUNNER GAGE,

      Defendant-Appellant.

UNPUBLISHED
February 25, 2026
11:27 AM

No. 369428
Ingham Circuit Court
LC No. 21-000525-FC

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Defendant, Nikkolas Gage, was convicted by a jury of first-degree criminal sexual conduct (CSC-I) through force or coercion causing personal injury, MCL 750.520b(f), assault with intent to do great bodily harm less than murder (AWIGBH) or by strangulation, MCL 750.84, and domestic violence, second offense, MCL 750.81(2) and (4). Defendant was sentenced to serve concurrent prison sentences of 300 to 600 months (25 to 50 years) for CSC-I, 57 to 120 months (4.75 to 10 years) for AWIGBH, and time served for domestic violence. We affirm but remand for correction of defendant's PSIR.

## I. FACTS

On June 6, 2021, Lansing Police Officers Corey Crenshaw and Dan Foote responded to a 911 call from a "suicidal female" at a house on Fairview Avenue in Lansing. The officers knocked on the door, identified themselves as police, but no one answered. When walking back to their car, the officers saw a man come out from the driveway. The man identified himself as Benjamin Riddle. As the officers were talking to Riddle, another man with long hair exited the front door. Officer Foote asked him to stop and talk, but he went back inside and closed the door. As Officer Crenshaw approached the porch, Officer Foote yelled that the man with long hair was running away in the back alley. The officers gave chase, but lost sight of him. The officers went back to the home and detained Riddle, but released him after he gave a statement.

The officers found the back door was left open. Officer Crenshaw called for backup and, when back up arrived, went inside the house. The police found the female 911 caller hiding in a closet. Officer Crenshaw described her as disheveled, emotional, and fearful. She also had red

eyes and abrasions to her face and neck. The woman identified herself as ACB and told the police she had been raped and strangled by her ex-boyfriend, defendant. The officers took ACB to the hospital for a Sexual Assault Nurse Examiner (SANE) exam and to be treated for her injuries.

Officer Crenshaw and Officer Foote also took a statement from a next-door neighbor, Mary Jo Cook. Ms. Cook testified at trial that the night of June 5 or the early morning of June 6, 2021, she heard a woman screaming in the house next door saying, "Stop. Get off of me. Get off of me." Ms. Cook called 911 and the police arrived soon after. She could see the police in the backyard talking to a girl who was very upset and crying. Ms. Cook believed the voice of the girl in the backyard was the same voice she heard screaming earlier.

At trial, ACB testified that she had been in a relationship with defendant for about a year, and she had been living with defendant at the house on Fairview Avenue. They were in the process of breaking up because defendant was physically and verbally abusive to her. On June 5, 2021, ACB finished work and texted defendant that she wanted to stop by and retrieve some of her belongings. Defendant agreed and said he would be at the house when she arrived. When ACB arrived, she was the only one in the house. There was a bottle of whiskey there, and ACB consumed two shots of whiskey before defendant and two other men arrived. ACB knew one of the men as Ben Riddle, but she did not know the other man. ACB learned his name was Nolan, but could not recall his last name at trial. ACB stayed for a while because she still had feelings for defendant. They were drinking and listening to music in the living room for about 45 minutes. ACB took a third shot of whiskey and began to feel tired. She started to fall asleep on the couch.

ACB was awakened by defendant forcefully grabbing her by her hair. Defendant dragged her off the couch, through the living room and kitchen, and down the stairs to the basement "like a ragdoll." ACB hit her head on the stairs, and then heard Riddle and Nolan following down the stairs. Defendant continued to drag her through the basement. When they got to the corner, defendant took off ACB's clothes. ACB fought and tried to get defendant off of her. She screamed "stop, stop." Defendant flipped ACB over on to her stomach and inserted his penis into her vagina. As defendant raped ACB, he had his knees pressed into her body and he hit and strangled her. ACB did not lose consciousness, but she felt dizzy. Defendant then got up and Nolan came over and raped ACB. While all of this was happening, Riddle stood and watched. After Nolan was done, ACB heard him run back upstairs, and defendant and Riddle soon followed.

ACB pushed herself up and went upstairs. Defendant and Riddle were still there, standing by the front door. Defendant approached ACB and tried to grab her. ACB grabbed a chair and threatened to break it over defendant's head if he touched her. Defendant and Riddle left. ACB went into a closet and hid while she called the police. The police found her in the closet. ACB and Officer Crenshaw sat down in the backyard while she told him what happened. The police took photos of ACB's injuries, which included blood and bruises on her face, bruises and scratches on her neck, and bruises on her arms, wrists, and legs. These photos were admitted at trial.

Later that morning, the police received an anonymous call that defendant had returned to the home on Fairview. When the police arrived, they found defendant sleeping on the front porch and arrested him for CSC-I and assault by strangulation.

The SANE nurse, Aimee Fitzpatrick, and DNA analysts from the Michigan State Police (MSP) testified at defendant's trial. Fitzpatrick performed a SANE exam and strangulation assessment on ACB that day. Fitzpatrick also took photos of ACB's injuries. ACB had so many bruises that Fitzpatrick could not count them. Fitzpatrick collected a buccal swab and swabs from ACB's vulva. Fitzpatrick placed these in the SANE kit for testing. Heather Goff, the DNA analyst for MSP, testified that she processed the vulvar swab and found DNA from three contributors. Testing revealed it was 11 sextillion times more likely that the DNA originated from defendant and one other unrelated contributor. Goff explained that means there was very strong support that defendant was a contributor.

On the second day of trial, a Friday, defense counsel brought a potential discovery violation to the attention of the trial court. The day before trial, on Wednesday, defense counsel received from the prosecution a strangulation assessment and approximately 50 photographs of the victim's injuries that were taken by the SANE nurse, which defense counsel had never seen before. Defense counsel moved to exclude the evidence given the late disclosure. Defense counsel argued that the assessment and photos were cumulative because many of the injuries depicted in the photos were also photographed by police and already in evidence, and the SANE nurse could testify to any information in the strangulation assessment.

The prosecutor admitted the disclosure was late, but stated the prosecution did not receive the evidence until the day before trial, and immediately turned it over to defense counsel. The prosecutor explained that she planned to meet with the SANE nurse two weeks before trial but could not. The prosecutor met with her the day before trial, and she brought up the strangulation assessment and photographs. Only then did the prosecutor realize she did not have those materials. The prosecutor expressed she sought to admit the strangulation assessment, which was an addendum of the SANE report that defense counsel had possession of since 2021, and only 11 of the 50 photographs. The trial court found the late disclosure to be a discovery violation under MCR 6.201(J) because the pictures and the strangulation assessment constituted mandatory discovery material under MCR 6.210(A)(3) (expert report). However, the trial court found that moving the nurse's testimony to Monday, the third day of trial, was an appropriate remedy. Thus, defendant and counsel would have time over the weekend to review the evidence and prepare to cross-examine the nurse. The trial court found defendant would not be prejudiced by the late disclosure. The SANE nurse testified on Monday and the evidence was admitted.

Defendant was found guilty on all counts. Defendant now appeals.

## II. DISCOVERY VIOLATION

Defendant argues the admission of the strangulation assessment and photos at a later day of trial did not remedy the discovery violation. We disagree.

This Court reviews a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). "An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes." *Id*. at 18.

The trial court properly recognized that the strangulation report and accompanying photographs were subject to mandatory disclosure under MCR 6.201(A)(3), and the untimely disclosure by the prosecution constituted a discovery violation under MCR 6.201(J). MCR 6.201(J) provides in full:

> Violation. If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

There is no general constitutional right to discovery in a criminal case. *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Suppression of evidence requested by and favorable to the accused violates due process where the evidence is material. *People v Banks*, 249 Mich App 247, 254; 642 NW2d 351 (2002), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). But a late disclosure of evidence by the prosecutor under MCR 6.201(J) is not a constitutional violation. *Elston*, 462 Mich at 765-766. See also *People v Pace*, 102 Mich App 522, 529; 302 NW2d 216 (1980); *People v Taylor*, 159 Mich App 468, 470-471; 406 NW2d 859 (1987). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *Banks*, 249 Mich App at 252. Further, the defendant must show that he will suffer actual prejudice. *People v Rose*, 289 Mich App 499, 525-526; 808 NW2d 301 (2010). Our Supreme Court has held that suppression of evidence is a severe remedy for a discovery violation. *Elston*, 462 Mich at 764. See also *Rose*, 289 Mich App at 526. Rather, a continuance to allow the defendant to prepare for the admission of the evidence at trial often alleviates any harm to a defendant's case. *Elston*, 462 Mich at 764.

Here, the prosecutor's reason for the late disclosure was a lack of knowledge of the strangulation assessment and photos. Once the prosecutor discovered this evidence, there was no delay in turning it over to defense counsel. This is not a situation in which the prosecutor introduced surprise evidence at trial that was never disclosed to the defendant, such as the cases defendant cites in his brief. See e.g., *Pace*, 102 Mich App at 522; *People v Paris*, 166 Mich App 276, 280-281; 420 NW2d 184 (1988). Rather, as soon as the evidence was discovered, the prosecution brought the issue to the attention of defense counsel and the trial court. Thus, the reason for the late disclosure does not weigh in favor of suppression. See *Banks*, 249 Mich App at 252.

Defense counsel argued that defendant would be prejudiced by the admission of the evidence because counsel would not have time to prepare a defense, such as retaining a medical expert to assess the photos, and that the evidence was cumulative because the SANE nurse could testify as to her observations during the exam. The trial court found defendant would not be prejudiced if the prosecution moved the SANE nurse's testimony, and subsequent admission of the evidence, to Monday. Suppression of evidence is only warranted for the most egregious

discovery violations. See *Elston*, 462 Mich at 764. As the trial court found here, the inadvertent discovery violation was not egregious and would not prejudice defendant if he were given time to prepare to respond to the evidence. Delaying the SANE nurse's testimony and the introduction of the strangulation assessment and photos until the third day of trial gave defendant two days to prepare to cross-examine her regarding the evidence. The police report and accompanying injury photographs, and the original SANE report that the defense had in its possession, put defendant on notice of the victim's allegations and injuries. While the SANE report, strangulation assessment, and photographs have not been provided to this Court on appeal, the prosecutor asserted at trial that the information was not new, and defense counsel did not disagree.

Defense counsel's argument that he would have retained a medical expert to review the evidence is likewise without merit. It appears defendant did not retain a medical expert to review the original SANE report and the injury photographs taken by police, as defendant did not present any expert testimony concerning that evidence at trial. And defendant did not argue that any of the information in the strangulation assessment and photographs differed from that in the original SANE report and police photographs. Therefore, a continuance to review the evidence was an appropriate remedy, and the trial court did not abuse its discretion in admitting the evidence at a later day of trial.

Late disclosure of evidence by the prosecutor is not a constitutional violation. *Elston*, 462 Mich at 765-766. Therefore, defendant's rights to due process, to confront witnesses, and to present a defense are not implicated. Furthermore, defendant does not explain how his right to the effective assistance of counsel was violated. Defense counsel identified the discovery violation and made a timely motion to suppress the evidence. Defense counsel cross-examined the SANE nurse regarding the evidence without issue. Therefore, defendant has failed to establish the factual predicate for his claim of ineffective assistance and his claim must fail. See *People v Abcumby-Blair*, 335 Mich App 210, 235-236; 966 NW2d 437 (2020).

### III. MISSING WITNESS JURY INSTRUCTION

Defendant argues the trial court abused its discretion in denying his request for a missing witness jury instruction as to witness Ben Riddle. The prosecution listed Riddle on every witness list provided to the trial court leading up to trial. Before trial began, the prosecutor informed defense counsel she did not intend to call Riddle as a witness, but offered assistance in producing Riddle if the defense intended to call him as a witness. Defense counsel affirmed that was his intent. Thus, a subpoena was sent to Riddle the same day as all other witness subpoenas were issued. There was no response and Riddle did not appear for trial.

On the third day of trial, the trial court held a hearing on whether the prosecutor exercised due diligence in attempting to produce Riddle. Detective Kristi Pratl searched Riddle's name in a police database and found his phone number and address. Officers went to the address multiple times, but no one answered the door and the house appeared vacant. When Detective Pratl called the phone number, Riddle's father answered and said he doubted his son would come to court because he had active warrants. However, Pratl's search did not show any active warrants. Detective Pratl also searched the local jails and hospitals but could not find him. Defense counsel indicated he also made his own efforts to find and serve Riddle to no avail. Defense counsel found an active bench warrant from March 2023 from the 54-A district court for Riddle. Defense counsel

argued that the prosecutor did not do its due diligence because she waited until the last minute to attempt to find Riddle, and asked for the missing witness instruction to be read to the jury.

The trial court found that there were no additional steps the prosecutor could have reasonably taken that would have been more effective in locating Riddle. The trial court believed that all reasonable steps had been taken, and just because the defense believed the prosecutor could have begun the search for Riddle at an earlier date, that is not the relevant inquiry the trial court must undertake. Therefore, the trial court found the prosecutor exercised its due diligence in attempting to produce Riddle, and denied the request for the missing witness instruction.

This Court reviews a trial court's determination of due diligence and the applicability of a missing witness instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). "A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *Id.* at 388. "A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence." *Id.* Due diligence is the attempt to do everything reasonable, but not everything possible, to obtain the presence of a witness. *Id.* at 391, citing *People v Snider*, 239 Mich App 393, 422; 608 NW2d 502 (2000). If the trial court finds the prosecutor did not do its due diligence, the jury should be instructed that it may infer the missing witness's testimony would have been unfavorable to the prosecution's case. *Id.* at 388, citing M Crim JI 5.12. In *People v Bean*, 457 Mich 677, 689-690; 580 NW2d 390 (1998), due diligence was not found when the prosecution merely called the witness's grandmother and visited the witness's boarded-up house, and then ceased all efforts to contact the witness. In *People v Dye*, 431 Mich 58, 67-69; 427 NW2d 501 (1988), the prosecutor made no efforts to locate witnesses for a retrial whom the prosecutor knew had moved out of state, until about 17 days before trial.

Here, the prosecutor undertook reasonable efforts in attempting to locate Riddle, including calling his father, visiting his home multiple times, and checking local jails and hospitals. While the prosecutor did not begin efforts to locate Riddle until about 13 days before trial, there is no reason to believe earlier efforts to locate him would have been fruitful. This is all the more true because Riddle had an active warrant for his arrest since March of 2023. Because the prosecutor was not required to do everything possible to locate Riddle, *Eccles*, 260 Mich App at 391, we cannot find the trial court abused its discretion in finding due diligence was exercised.

IV. VICTIM IMPACT STATEMENT

Defendant argues the victim impact statement section of the PSIR should be corrected to strike unsubstantiated allegations that he engaged in acts of CSC with other women. We agree.

"This Court reviews a trial court's response to a defendant's challenge to the accuracy of a PSIR for an abuse of discretion." *People v Maben*, 313 Mich App 545, 552; 884 NW2d 314 (2015) (citation and quotation marks omitted). MCL 780.764 states,

> The victim has the right to submit or make a written or oral impact statement to the probation officer for use by that officer in preparing a presentence investigation report concerning the defendant…. A victim's written statement shall upon the victim's request, be included in the presentence investigation report.

MCL 771.14(6) provides,

> At the time of sentencing, either party may challenge, on the record, the accuracy or relevancy of any information contained in the presentence investigation report. The court may order an adjournment to permit the parties to prepare a challenge or a response to a challenge. If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections.

When information in the PSIR is challenged, the trial court can (1) determine the accuracy of the information, (2) accept the defendant's version, or (3) simply disregard the challenged information. *Maben*, 313 Mich App at 553-554. If a court chooses to disregard the challenged information, "the court in effect determines that the information is irrelevant to sentencing." *People v Taylor*, 146 Mich App 203, 205; 380 NW2d 47 (1985). "The defendant is therefore entitled to have that information stricken." *Id*. at 205-206. A defendant's PSIR follows them to prison and "it may have ramifications for purposes of security classification or parole consideration when appropriate." *Maben*, 313 Mich App at 553 (citation and quotation marks omitted).

At sentencing, defense counsel objected to the second to last sentence of the Victim Impact Statement in the PSIR, which states "[ACB] stated that other young women have contacted her and told her they were forced to have sex with the defendant and that he was violent towards them." Defense counsel asked the trial court to strike that statement because it goes beyond the purpose and scope of a victim impact statement, and there was no information to corroborate it. The trial court found that it was the statement of the victim, so it should remain in the PSIR. Regardless, the trial court found the content of the statement was "not a matter of proof in the trial," so the trial court left the statement in the PSIR.

The record shows that the trial court disregarded the challenged information and seemingly did not consider the statement when sentencing defendant. However, the trial court did not strike it from the PSIR as defendant requested. This was an abuse of discretion. When a trial court disregards challenged information in a PSIR, a defendant is entitled to have that information stricken. See *Taylor*, 146 Mich App at 205-206. The statement could impact defendant's security classification at MDOC and could impact his ability to obtain parole. See *Maben*, 313 Mich App at 553. Defense counsel timely objected to the statement at sentencing and the trial court in effect determined the information to be irrelevant to the sentencing, and defendant was therefore entitled to have it stricken from the PSIR. See MCL 771.14(6); *Taylor*, 146 Mich App at 205-206. We remand to the trial court for the ministerial task of striking the challenged statement from the PSIR.

## V. OV 7

Defendant argues that the evidence did not justify the trial court's assessment of 50 points for offense variable (OV) 7. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494

Mich 430, 438; 835 NW2d 340 (2013). Clear error is present when this Court is left with a definite and firm conviction that an error occurred. *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012). Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

The trial court did not err in assessing 50 points for OV 7, MCL 777.37. OV 7 is aggravated physical abuse. It is an all-or-nothing offense variable where 50 points are assessed when the victim "was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense," and 0 points are assessed when the victim did not suffer aggravated physical abuse. MCL 777.37(1). "A trial court can assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440. This Court has found that excessive brutality means "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Walker*, 330 Mich App 378, 391; 948 NW2d 122 (2019) (quotation marks and citation omitted). The four categories in OV 7 that justify a score of 50 points are distinct alternatives. *Id.* at 389. "In other words, if a defendant treated a victim with excessive brutality, 50 points should be scored under OV 7 even if the defendant did not intend to substantially increase the victim's fear or anxiety." *Id.*

The trial court found defendant exhibited excessive brutality towards ACB. The prosecutor agreed the evidence supported a finding of excessive brutality, specifically the fact that defendant dragged ACB by her hair and brutally beat her while committing CSC-I. Defense counsel objected, arguing defendant's conduct was not so excessive beyond what would be required to commit the offense. The trial court overruled the objection and assessed 50 points for OV 7.

The record supported scoring OV 7 at 50 points based on defendant's excessive brutality during the commission of CSC-I. MCL 777.37(1)(a). The trial court found that because defendant dragged the victim by her hair down a flight of stairs and through the concrete basement floor, in order to rape her, he showed excessive brutality. ACB testified that defendant punched her while he raped her. Photos of ACB's injuries were admitted at trial, and the SANE nurse testified that ACB had so many bruises all over her body that the nurse could not count them all. The brutal dragging, punching, and hitting of ACB during the commission of CSC-I constituted savagery or cruelty beyond even the 'usual' brutality of a crime, as well as having two other men present during the sexual assault, one of whom also allegedly raped ACB while defendant watched. See *Walker*, 330 Mich App at 391. See also *People v Rosa*, 322 Mich App 726, 744; 913 NW2d 392 (2018) (finding excessive brutality where defendant attempted to strangle the victim while committing assault with intent to murder, and attempting to rape her, in front of the victim's 5-year-old child).

## VI. PROPORTIONALITY OF SENTENCE

Defendant also contends that the trial court failed to justify imposing a sentence that departed from the minimum sentencing guidelines range. We disagree.

This Court reviews sentences that depart from the minimum sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). Sentencing courts must consult the sentencing guidelines manual to determine the applicable guidelines range

-8-

and take it into account when imposing a sentence. *Lockridge*, 498 Mich at 365. However, the sentencing guidelines are only advisory. *Id.* Sentences must be proportionate to the seriousness of the circumstances surrounding the offense and offender, and appellate review of a sentence asks whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

Defendant's sentencing guidelines range for CSC-I was calculated to be 171 to 285 months' imprisonment. The trial court ultimately sentenced defendant to 300 to 600 months' imprisonment with credit for 344 days served. The trial court found the facts of the crime to be "shockingly brutal," and found defendant to be a danger to vulnerable people such that he needed to be "removed from society for a long, long period of time." The trial court believed the guidelines did not take into account the risk that defendant posed to the community. The trial court recognized it was imposing a departure sentence, but found it was warranted "given the horrible events, the heartless behavior by defendant," and that defendant was "too dangerous to be around."

Defendant's sentence was proportionate to the seriousness of the circumstances surrounding defendant and the offense of CSC-I. See *id.* The trial court properly found that the minimum sentencing guidelines were inadequate to account for the aggravating circumstances of the brutal beating and rape of the victim. The trial court explained its reasons for imposing a departure sentence, which included finding the sentencing guidelines did not account for how great a risk defendant posed to the community. Defendant's minimum sentence was a 15-month departure from the top of the minimum guidelines range. The trial court took the guidelines range into account, see *Lockridge*, 498 Mich at 365, recognized it was imposing a departure sentence, and properly explained how the sentence was more proportionate to the seriousness of the circumstances surrounding defendant and the crime, see *Steanhouse*, 500 Mich at 459-460. Therefore, the trial court did not abuse its discretion.

We affirm defendant's convictions and sentences, but remand for the ministerial task of striking the second to last sentence of the victim impact statement in defendant's PSIR. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel