*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT LEE BARTOLOMUCCI, JR.,

Defendant-Appellant.

UNPUBLISHED
May 20, 2025
11:29 AM

No. 369058
Macomb Circuit Court
LC No. 2022-000094-FC

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of carjacking, MCL 750.529a; second-degree fleeing and eluding a police officer, MCL 257.602a(4) (fleeing and eluding); assaulting, resisting, or obstructing a police officer (resisting arrest), MCL 750.81d(1); and driving while license suspended or revoked (DWLS), MCL 257.904(1).[1]  The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to consecutive prison terms of 25 to 50 years for the carjacking conviction, 5 to 15 years for the fleeing and eluding conviction, 5 to 15 years imprisonment for the resisting arrest conviction, and one year in jail for the DWLS conviction.  We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 7, 2021, at approximately 11:20 p.m., Carol Stinson went to a gas station on the corner of Hoover Road and 13 Mile Road in Warren, to get gas for her vehicle, a black Malibu. Defendant approached Stinson and attempted to take her car keys, eventually taking them by force and driving away in her car.  Approximately 30 minutes later, multiple police officers and vehicles attempted to apprehend defendant, who was in the Malibu parked on Sutherland Drive.  Defendant attempted to flee and drove the Malibu into one of the patrol cars, struck a parked Dodge Caliber, and drove away in the direction of Schoenherr Road and 11 Mile Road, where he struck a curb and

---

[1] Defendant was also acquitted of assault with a dangerous weapon (felonious assault), MCL 750.82.

collided with another patrol car. Defendant did not obey police commands to exit the Malibu and required physical force to subdue and arrest.

At trial, Stinson identified defendant as the man who had attacked her and stolen her car. Defendant was also identified by other witnesses. Surveillance camera footage showing the carjacking was played for the jury. Detective Nathan Callow of the Warren Police Department testified that he obtained a search warrant for defendant's cellular phone location data. Detective Callow testified that he entered defendant's number into a program called CellHawk in order to discover defendant's cellular-service provider; Detective Callow subsequently obtained location data records from the provider indicating that defendant's phone had "pinged" a cellular tower within one mile of the carjacking at 10:26 p.m. Detective Callow prepared a supplemental police report discussing his work in obtaining defendant's cellular data records; the prosecution did not provide this report prior to trial, but did provide it before the close of proofs.

Recordings of telephone calls defendant made from jail were played for the jury, and a portion of the transcript of those calls was read into the record. Relevant to this appeal, defendant stated during a call to a friend that "in order for it to be carjacking, there must be a weapon, and I didn't have a weapon, okay?" He also stated, "I didn't have a weapon. It's not going to be carjacking, I talked to people, and it's going to become either larceny from a person or unarmed robbery."

During the prosecution's closing argument, the prosecution replayed portions of defendant's jail calls to his friend, and subsequently stated that defendant made a "terrible decision[]" to take legal advice from a cell mate, since defendant was mistaken about the required elements to prove carjacking. The prosecution stated in relevant part:

> Notice what [defendant] doesn't say in his very, very first call to his girlfriend? . . . What does he not say? He doesn't say, I didn't do this. This is—I don't know why I'm here. This is confusing. He doesn't say, I—I don't know what they're talking about. I didn't—I didn't have any part of this. There's no denial. There's no denial. . . . He doesn't say it in the very first call cause he knows. He knows who was there. He knows who carjacked Carol Stinson, okay?

During defendant's closing argument, defense counsel discussed several sources of reasonable doubt throughout the case. Defense counsel used a display board as a visual aid, and stated at the end of her argument that she was "gonna add a blank card to the board" to represent other examples of reasonable doubt that she had not discussed. During rebuttal, the prosecution asked and was given permission from defense counsel to use her visual aid. The prosecution discussed the blank card on the display board, stating in relevant part:

> That last card [defendant's counsel] left us she did for good reason. She left us that card because the Defendant is guilty.
>
> I don't know what [defendant's counsel] would say if she got back up here—had a chance to get back up here. What I do know is whatever it is she does . . . would not have anything to do with the elements because she's not talked about one element the entire time.

During voir dire, the prosecutor had showed the jury the badge he carried as a prosecuting attorney. During rebuttal arguments, the prosecutor stated in relevant part:

> Do you remember we talked about the badge that I use as a prosecutor, and I showed it to somebody on this side of the jury box, and then asked somebody on this side of the jury box six feet away, what color was my badge, and they didn't know. Why didn't they know? Because people could be looking at different things at different times, okay?

The prosecution also responded to defendant's argument that the damage to the parked Dodge Caliber had not resulted in additional charges to defendant, stating, "The fact that–the fact that my office didn't charge even more crimes against this Defendant should–should make you find him innocent of the crimes we did charge against him . . . . I'm flabbergasted by that one." Responding to the argument that defendant's choice to drive the Malibu toward patrol cars rather than away created reasonable doubt, the prosecution stated "[t]he Defendant being stupid is not a–a defense, unfortunately, in this case, otherwise, I don't know that I would have a case."

After the parties concluded their closing arguments, defense counsel objected to the prosecution's display of a badge on the grounds that it was an attempt to improperly bolster the prosecution's case. The prosecution responded that badge was merely used as a visual aid while discussing differences in witness testimony regarding the same event. The court held that defendant's objection could be cured by the jury instruction regarding what constituted evidence, which did not include statements from the attorneys. Defense counsel agreed that an instruction could cure the error. The court then gave the applicable instruction when it presented the jury instructions.

Defendant was convicted as described. After his conviction but prior to sentencing, defendant moved to adjourn sentencing and to obtain expedited trial transcripts. Although not labeled as such, the parties appear to agree that this motion was in effect a motion for a new trial based on newly-discovered evidence. Defendant argued that Detective Callow's testimony during trial contradicted a statement made by the prosecution after trial concerning how police had obtained defendant's cellular data. Detective Callow had stated in his search warrant affidavit that defendant provided his cellular number during booking. At trial, Detective Callow testified that he entered defendant's phone number into CellHawk in order to obtain subscriber information. However, defendant asserted that in an email exchange with the prosecution after trial was concluded, the prosecution indicated that Detective Callow had obtained the phone number by removing a SIM card from defendant's phone, putting it in a machine to obtain the serial number, and entered that serial number into CellHawk to obtain the subscriber information. Defense counsel read the email exchange into the record at the motion hearing:

> On October 17th of 2023 I e-mailed [the prosecution] and said, can you reach out to Callo[w] and ask how he got the phone number for [defendant]. I reviewed the report including the one that I got during trial and don't see anything in there about it. I could be missing it but wanted to ask you since it's quicker to ask Callo[w]. And then I thanked him.

[The prosecution] responded on October 22nd, indicated that he had been in trial, he said, what phone number for [defendant]?

I responded on October 23rd, and I said the number that Warren got the phone records for, referring to Warren Police Department.

On October 23rd [the prosecution] responded, I am pretty sure they got it from the phone itself.

On October 23rd I responded again, can you please talk to Callo[w], or can you talk to Callo[w] and find out, please. I don't see anything in the discovery, and it's my understanding that Callo[w] said he couldn't get into the phone.

And then again, on October 23rd, [the prosecution] responded, spoke with Callo[w], they pulled the chip out of the phone, put it in the machine and got the phone serial number, put that information into Cell Hawk and got the subscriber information.

Defense counsel argued that Detective Callow had provided perjured testimony and that police had obtained defendant's phone number through a warrantless search of defendant's phone. The prosecution responded that, although some information had been retrieved from the SIM card, defendant had still provided his phone number voluntarily; further, defendant's cellular number was already in their system as a result of prior police contact. The trial court denied defendant's motion.

After sentencing, defendant moved to compel posttrial discovery on the issue of the method by which the police had obtained defendant's cellular data. The trial court denied that motion. This appeal followed.

## II. MOTION FOR A NEW TRIAL

Defendant argues that the trial court erred by denying his motion for a new trial on the basis of newly discovered evidence. Specifically, defendant argues that the prosecution's posttrial emails indicate that defendant's phone number was obtained by a warrantless search of his phone's SIM card, which was then used to obtain a warrant for defendant's cellular data. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial. An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Hammerlund*, 337 Mich App 598, 615; 977 NW2d 148 (2021) (quotation marks and citations omitted). This Court reviews de novo questions of constitutional law. *People v Hughes*, 506 Mich 512, 522; 958 NW2d 98 (2020).

MCR 6.431(B) provides in relevant part that "the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." Four requirements must be established to prevail on a motion for a new trial based on newly discovered evidence: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the

party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Abcumby-Blair*, 335 Mich App 210, 226; 966 NW2d 437 (2020) (quotation marks and citation omitted).

This Court has recognized that "the discovery that testimony introduced at trial was perjured may be grounds for ordering a new trial." *People v Rogers*, 335 Mich App 172, 197; 966 NW2d 181 (2020) (quotation marks and citations omitted). In this case, defendant argues that the prosecution admitted that Detective Callow had obtained the serial number to defendant's phone by removing a SIM card from his phone and scanning it with a device, and then entering that number into CellHawk, rather than from entering defendant's phone number that he had voluntarily provided. Defendant argues that these statements show that Detective Callow lied on his search warrant affidavit and provided perjured testimony. We disagree.

As stated, Detective Callow averred in his search warrant affidavit that defendant's phone number had been provided by defendant during booking. He testified at trial that he entered defendant's phone number into CellHawk in order to obtain his provider information. These statements do not contradict each other; moreover, the prosecution's emails, as read by defense counsel in the record, do not contradict these statements. The prosecutor corresponding with defense counsel stated that he was "pretty sure" that "they got it from the phone itself" and "they pulled the chip out of the phone, put it in the machine and got the phone serial number, put that information into Cell Hawk and got the subscriber information." This unsworn statement does not explicitly state that defendant did *not* provide his phone number during booking or otherwise directly contradict Detective Callow's statement in the search warrant affidavit or his testimony. In fact, the email exchange provided by defendant contains no mention of the search warrant affidavit or Detective Callow's trial testimony.

"[D]efendant b[ears] the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Here, defendant has failed to present this Court with a record to verify the factual basis of his argument that Detective Callow lied in his search warrant affidavit, gave perjured testimony, or performed an illegal search of defendant's SIM card. Further, although the search warrant affidavit and Detective Callow's supplemental police report were not provided to defendant before trial, they were provided during trial before the close of proofs. Defense counsel stated on the record that she had received Detective Callow's report and reviewed it, but she declined the prosecution's offer to recall Detective Callow for additional cross-examination. Therefore, defendant cannot demonstrate that the allegedly newly-discovered evidence could not have been discovered and produced at trial. *Abcumby-Blair*, 335 Mich App at 226.

In any event, even if defendant had successfully established a factual basis for his arguments and demonstrated that the police had in fact obtained his phone number via an illegal search of his phone, defendant has not shown that this newly-discovered evidence would make a different result probable on retrial. *Id.* There was ample evidence that defendant had committed the offenses charged against him, including several eyewitnesses, multiple video recordings, and defendant's own statements on recorded jail calls. Defendant has not established that suppression of Detective Callow's brief testimony that defendant's cellular phone "pinged" a tower near the location of the carjacking would make a different result probable on retrial. Accordingly,

defendant has failed to show that he was entitled to a new trial on the grounds of newly-discovered evidence. *Hammerlund*, 337 Mich App at 615.

Defendant also maintains his Sixth Amendment right to cross-examine and confront the witnesses against him was violated because Detective Callow "lied in his sworn search warrant affidavit and therefore improperly withheld information relevant to impeachment of a government witness." We disagree. The United States and Michigan Constitutions protect a defendant's right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). While impeachment evidence may be grounds for a new trial, a defendant must show "(1) there is an exculpatory connection on a material matter between a witness's testimony at trial and the new evidence and (2) a different result is probable on retrial." *People v Grissom*, 492 Mich 296, 319; 821 NW2d 50 (2012)

As stated, defendant had the opportunity to cross-examine Detective Callow regarding his statement on the search warrant affidavit and declined. Defendant has therefore not established that his right to confrontation was violated. *Adamski*, 198 Mich App at 138. Moreover, for the reasons stated above, defendant has not demonstrated that impeaching Detective Callow concerning the method by which he obtained defendant's cellular phone number or location data would make a different result probable on retrial. *Grissom*, 492 Mich at 319.

In sum, defendant has failed to establish that the trial court abused its discretion by denying his motion for a new trial on the basis of newly discovered evidence. Defendant has also failed to establish that his constitutional rights were violated.

### III. PROSECUTORIAL MISCONDUCT

Defendant also argues that he was denied a fair trial due to the prosecution's misconduct[2] during closing arguments. We disagree.

"[T]o preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks and citation omitted; alteration in original). Here, defendant objected to the prosecutor's display of his badge to the jury during closing arguments and requested a curative instruction. Therefore, this aspect of his argument is preserved on appeal. However, defendant failed to make any objections with respect to his remaining claims of prosecutorial misconduct. Accordingly, those arguments are unpreserved.

---

[2] This Court has noted that while "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, . . . these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015)." In this case, the majority of defendant's allegations involve conduct that, if it was done intentionally, would rise to the level of misconduct rather than error. Accordingly, we use the term "prosecutorial misconduct" in reference to defendant's claims.

"Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Reversal is required "if it appears more likely than not that the error was outcome-determinative." *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016). This Court reviews unpreserved issues of prosecutorial misconduct for plain error. *Isrow*, 339 Mich App at 529. Even if a plain error occurred, reversal is only required if a defendant can show prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Isrow*, 339 Mich App at 529 (quotation marks and citations omitted).

Claims of prosecutorial misconduct are decided on a case-by-case basis, which requires this Court to "examine the entire record and evaluate a prosecutor's remarks in context." *Isrow*, 339 Mich App at 529 (quotation marks and citation omitted). "[T]he propriety of a prosecutor's remarks depends on the particular facts of each case," and prosecutors are permitted to argue from the evidence and any reasonable inferences arising therefrom. *People v Loew*, 340 Mich App 100, 126; 985 NW2d 255 (2022) (citation omitted), aff'd ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 164133).

Defendant argues that the prosecutor improperly vouched for his case and witnesses' credibility by flashing his badge during closing argument. We disagree.

A prosecutor may not "improperly invoke[] the prestige of the office" during closing arguments. *People v Matuszak*, 263 Mich App 42, 55; 687 NW2d 342 (2004). While "[a] prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness," a prosecutor is permitted to "argue from the evidence, and reasonable inferences from it, to support a witness's credibility." *Isrow*, 339 Mich App at 529 (quotation marks and citations omitted). Here, the prosecutor used his badge as a visual aid during voir dire and closing argument while asserting that witnesses' observations of the same object may differ depending on their perspective. Upon defendant's objection, the prosecutor explained that he was only using the badge for demonstrative purposes.

Defendant has not established that the prosecutor's use of his badge as a visual aid served to improperly invoke the prestige of his office; the mere display of a badge by the prosecutor does not imply that the prosecutor has special knowledge of witnesses' credibility or defendant's guilt. Further, any error was cured by the trial court's instruction to the jury that the lawyers' commentary and arguments were not evidence, as defense counsel conceded at trial. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citations omitted). Therefore, any alleged error was not outcome-determinative, and reversal is not required. *Blevins*, 314 Mich App at 355.

Defendant also argues that the prosecutor improperly engaged in ad hominem attacks by calling defendant "stupid." The prosecutor's theme during closing argument was that defendant made a series of bad decisions on the night of the incident. During rebuttal, the prosecutor addressed defense counsel's argument that his decision to turn the Malibu toward the police created reasonable doubt of his intent to flee, stating that "[t]he defendant being stupid is not a–a defense, unfortunately, in this case, otherwise, I don't know that I would have a case."

"Prosecutors . . . need not confine argument to the blandest of all possible terms[.]" *Loew*, 340 Mich App at 126 (citation omitted; alteration in original). Although the prosecutor's language was aggressive, his statements ultimately comported with his argument that defendant continually made bad decisions on the night of the incident. *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007). Moreover, the prosecutor's comment that defendant was "stupid," while insulting to defendant, was isolated; accordingly, reversal is not required. See *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (concluding that while the prosecution improperly called defendant a moron and idiot, its comments did not require reversal "given the overwhelming evidence of defendant's guilt and the isolated nature of the comments").

Defendant also argues that the prosecutor improperly shifted the burden of proof to defendant by referencing his failure to deny his crimes during recorded jail calls. We disagree. The challenged statements were made during the prosecutor's discussion of defendant's recorded jail calls during closing argument, when he argued that defendant made a "terrible decision[]" by "taking legal advice from somebody who is sitting in a cell next to him," and noted that defendant had not affirmatively stated his innocence during a phone call to his girlfriend:

> Notice what [defendant] doesn't say in his very, very first call to his girlfriend? . . . What does he not say? He doesn't say, I didn't do this. This is—I don't know why I'm here. This is confusing. He doesn't say, I—I don't know what they're talking about. I didn't—I didn't have any part of this. There's no denial. There's no denial. . . . He doesn't say it in the very first call cause he knows. He knows who was there. He knows who carjacked Carol Stinson, okay?

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof," *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). In this case, given the context of defendant's statements on the phone, the prosecutor's argument did not shift the burden of proof. Defendant's statements made during jail calls included his belief that he could not be convicted of carjacking because he "didn't have a weapon" and therefore "it would become either larceny from a person or unarmed robbery." The prosecution argued that the jury could infer evidence of defendant's guilt from these statements as well as the lack of statements from defendant indicating his innocence. See *Loew*, 340 Mich App at 126 (noting that prosecutors are permitted to argue from the evidence and reasonable inferences arising therefrom). No plain error requiring reversal occurred. *Isrow*, 339 Mich App at 529.

Defendant also argues that the prosecutor "improperly told the jury that the defense lawyer knew that [defendant] was guilty and that her argument and failure to address certain elements was evidence that she had personal knowledge of her client's guilt." This argument is based on the prosecutor's reference to the display board that defense counsel used during closing arguments. Using the same display board during rebuttal, the prosecutor stated, "That last card [defendant's counsel] left us she did for good reason. She left us that card because the defendant is guilty." In the context of the prosecutor's rebuttal closing argument, this statement did not imply that defendant's counsel had knowledge of defendant's guilt; rather, the prosecutor was merely commenting on the weakness of the defense's theory of case, which is permissible. See *People v*

*McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). Accordingly, reversal is not required. *Isrow*, 339 Mich App at 529.

Defendant also argues that the prosecutor stated that defendant had committed other crimes that were not charged. During the prosecutor's rebuttal argument, he responded to the contention of defendant's counsel that defendant had not been charged with a crime related to the damage to the Dodge Caliber. The prosecutor stated he was baffled by the suggestion that "the fact that [his] office didn't charge even more crimes against this Defendant should–should make [the jury] find him innocent of the crimes [he] did charge against him." Again, read in context, this comment was a response to the closing argument of defendant's counsel. Further, the jury was instructed that arguments from attorneys are not evidence; there is no evidence that the jury took the prosecutor's argument as proof that defendant had committed other uncharged crimes while fleeing from police. Accordingly, the prosecutor's argument was not improper and reversal is not required. See *Loew*, 340 Mich App at 126.

Additionally, with respect to all of defendant's arguments, the prosecutor's comments do not require reversal because defendant has failed to establish that any purported error affected the outcome of the lower court proceedings, in light of the overwhelming evidence supporting his convictions. *Isrow*, 339 Mich App at 529. And with regard to defendant's unpreserved arguments, defendant has not established that any error resulting from the prosecution's statements could not have been prevented with a curative instruction. *Isrow*, 339 Mich App at 529.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-9-