*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN SCOTT LEONARD,

        Defendant-Appellant.

FOR PUBLICATION
June 22, 2026
2:40 PM

No. 377017
Clinton Circuit Court
LC No. 24-011693-FC

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

RIORDAN, J.

Defendant appeals by leave granted[1] the trial court's orders denying his motions to compel discovery of the complainants' complete cellular phone data, which the complainants voluntarily surrendered to the Clinton County Sheriff's Department, and one complainant's counseling therapy records.

Defendant argues that he is entitled to production of the full extracted cellular phone data under MCR 6.201(A) and *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), that the therapy records in question are not privileged, and, alternatively, that he has a good-faith belief grounded in articulable facts that justifies an *in camera* review of the records for information potentially necessary to his defense. We affirm the substance of the trial court's rulings but remand to that court for further proceedings consistent with this opinion.

## I. BACKGROUND

Defendant was charged with six counts of first-degree criminal sexual conduct after three complainants disclosed to the police that defendant had allegedly sexually assaulted them more than 25 years ago. At the time of the alleged criminal conduct, the complainants all were under 13 years of age. During defendant's preliminary examination, a prosecution witness

---

[1] *People v Leonard*, unpublished order of the Court of Appeals, entered January 8, 2026 (Docket No. 377017).

-1-

acknowledged that he had communicated with the complainants by text message about the pending case. The trial court then ordered that the witness preserve any cellular phone data or text messages relating to the case.

Also at the preliminary hearing, one of the complainants testified that he previously had attended therapy and received other mental-health services.[2] Defense counsel asked the complainant about whether he had discussed the instant allegations with his therapist, but the district court sustained the prosecution's privilege objection. Later, that complainant made reference that he only had discussed the alleged sexual assaults with his family and later with the police.

After the preliminary examination, each complaining witness signed a prepared form stating that he or she "hereby authorize[s] the above-mentioned Officers to take and seize" and "conduct a complete search" of his or her cellular phone.[3] The sheriff's office then extracted the data from the cellular phones, and the data was searched by a police expert for communications about the case. Supplemental reports, which described what was found, were prepared and provided to both the prosecution and defendant.

Defendant moved to compel discovery of, in relevant part, the complainants' full cellular phone data, as well as the one complainant's therapy records. At a motion hearing concerning the therapy records, defense counsel acknowledged that the therapy records were privileged for the purposes of MCR 6.201 but argued that those records were nonetheless subject to an *in camera* review under *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994), and MCR 6.201(C)(2). The trial court denied the motion to compel discovery of the therapy records, explaining that defense counsel merely raised a "generalized assertion" that the records were necessary, which is insufficient for an *in camera* review under *Stanaway*.

The trial court then held a hearing regarding defendant's motion to compel discovery of the cellular phone data, and Clinton County Sheriff's Office Detective James Chrenka testified that he told the "family members involved in this incident that [he] would only be searching for messages on their device . . . in accordance with what the court had asked for." Further, Detective Chrenka stated that he did not narrow the scope of the consent on the written consent form itself because he told the family members verbally that the search was narrowly tailored.

At the conclusion of the hearing, the trial court declined defendant's request to compel discovery of the entire cellular phone data. The trial court analogized the search of the complainants' cellular phones to a search pursuant to a warrant of a criminal defendant's cellular phone. The court reasoned that "the same sorts of [Fourth Amendment] protections should also be afforded to those who report criminal activity in order to prevent a chilling effect on the reports

---

[2] The complainant explained that he received mental-health services for a couple of years beginning when he was about seven years old in 1997 or 1998, and again for a couple of years beginning when he was about 30 years old in 2021.

[3] The forms were prepared by the Clinton County Sheriff's Office and are clearly intended to function as written consent for searches to be signed by suspects.

of those alleged crimes and activities." The trial court noted the heightened privacy interest in cellular phone data and found that the scope of the consent was limited by Detective Chrenka's verbal representations to the complainants.

This interlocutory appeal now follows.

## II. ANALYSIS

We review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *People v Antaramian*, 346 Mich App 710, 717; 13 NW3d 380 (2023). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (quotation marks and citation omitted). "We review de novo the underlying issues of statutory and court rule interpretation." *Id*. at 718. We also review de novo questions of constitutional law. *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022).

Under *Brady* and its progeny, the prosecution must disclose to a defendant "evidence within its control" that is "favorable to the accused." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). In addition, a defendant has a constitutional right to present a defense. See *Chambers v Mississippi*, 410 US 284, 294; 93 S Ct 1038; 35 L Ed 2d 297 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.").

Relatedly, "Michigan has long supported a policy of far-reaching, open, and effective discovery practice." *In re CADP*, 341 Mich App 370, 380; 990 NW2d 386 (2022) (quotation marks and citations omitted). However, parties in criminal cases have no general constitutional right to discovery. *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). The scope of discovery in criminal cases is defined and governed by MCR 6.201. *People v Greenfield*, 271 Mich App 442, 447; 722 NW2d 254 (2006). "[T]he subject of the discovery must be set forth in the rule or the party seeking discovery must show good cause why the trial court should order the requested discovery." *Id*. at 448. MCR 6.201(A) provides, in relevant part, that the following materials are subject to discovery:

> (2) any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial;
>
> * * *
>
> (6) a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request. A party may request a hearing regarding any question of costs of reproduction, including the cost of providing copies of electronically recorded statements. On good cause shown, the court may order that a party be given the opportunity to test without destruction any tangible physical evidence.

The prosecution also must provide "any exculpatory information or evidence" known to it. MCR 6.201(B)(1). "[E]lectronic materials are to be treated in the same manner as nonelectronic materials under this rule." MCR 6.201(K).

-3-

Under MCR 6.201(C)(1), "there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege . . . except as provided in [MCR 6.201(C)(2)]." That subrule provides, in relevant part, as follows:

> If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.
>
> (a) If the privilege is absolute, and the privilege holder refuses to waive the privilege to permit an in camera inspection, the trial court shall suppress or strike the privilege holder's testimony.
>
> (b) If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel. If the privilege is absolute and the privilege holder refuses to waive the privilege to permit disclosure, the trial court shall suppress or strike the privilege holder's testimony.

See also *Stanaway*, 446 Mich at 696.

## A. CELLULAR PHONE DATA

Defendant first argues that the trial court erred when it denied his motion to compel discovery of the extracted cellular phone data, i.e., the entire data of the complainants' respective cellular phones, as the data was not protected from discovery by the Fourth Amendment and was otherwise subject to discovery under *Brady* and MCR 6.201(A)(2) and (6). Defendant also suggests that the data is necessary for his defense.

In response, the prosecution concedes, as it did in the trial court, that it is required to disclose to defendant any material in the cellular phone data contemplated by the discovery rule, MCR 6.201, such as "any exculpatory information or evidence known to the prosecuting attorney" for the purposes MCR 6.201(B)(1). See also *Brady*, 373 US at 85-86. In other words, for example, the prosecution does not challenge the trial court's ruling from the bench that defendant is entitled to text messages from the complainants' cellular phone data discussing defendant and the instant case, as those text messages may have impeachment value at trial. Therefore, the only question before us is whether defendant is entitled to the complainants' entire cellular phone data, as defendant himself argues, or whether there is an alternate avenue for ensuring that defendant receives the material to which he is concededly entitled while also balancing the complainants' desire for privacy.

-4-

For the reasons set forth, we disagree that defendant is entitled to the production of the entire cellular phone data but conclude that further proceedings may be warranted on the matter via an *in camera* review.[4]

We cannot identify any published authority in Michigan addressing this question. However, we find persuasive the decision of the Minnesota Supreme Court in *In re BH*, 946 NW2d 860 (Minn, 2020), and the decision of the Texas Court of Appeals in *In re State ex rel Wadsworth*, 653 SW3d 759 (Tx Ct App, 2022).[5]

In *In re BH*, the district court ordered the alleged victim of a sexual assault "to produce her cell phone to a computer forensic expert hired by [the defendant]," and "the expert would then extract applicable data that might be relevant to the case and provide it to the district court for in camera review." *In re BH*, 946 NW2d at 863. The Minnesota Supreme Court ruled that this order was invalid, reasoning, in relevant part:

> This case demonstrates why considering the privacy interests of the victim is critical. Here, [the defendant] demands over 4 months of cell phone data, including data generated a month before the alleged assault occurred. Cell phones differ in both a quantitative and a qualitative sense from other objects that a person might possess. For example, the sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions. A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.
>
> Cell phones can also track a person's location, which when tracked can achieve near perfect surveillance, as if it had attached an ankle monitor to the phone's user. Data that tracks a person's location can reveal not only his particular movements, but through them his familial, political, professional, religious, and sexual associations. These types of records hold for many Americans the privacies of life. As part of the determination of reasonableness under [Minnesota Rule of Criminal Procedure 22.01, subdivision 5], and given the privacy concerns

---

[4] We are inclined to agree with defendant that the Fourth Amendment does not protect the complainants' cellular phone data in these circumstances. See *Martin v Martin*, 331 Mich App 224, 244-245; 952 NW2d 530 (2020). However, this issue is beside the point, as the question before us is whether defendant is affirmatively entitled to the data pursuant to constitutional law, court rule, or other authority.

We also note that the respective consent forms executed by the complainants expressly authorized the Clinton County Sheriff's Department, and no other individual or entity, to search the cellular phones. Thus, defendant cannot rely on these forms as constituting an acknowledgement by the complainants that he is entitled to their entire cellular phone data.

[5] "Decisions from other states are not binding on this Court, but they can be considered persuasive." *Tenhoppen v Glemboski*, 347 Mich App 759, 767 n 4; 16 NW3d 348 (2023) (quotation marks and citation omitted).

associated with cell phone data, we expect district courts to carefully examine subpoenas for such data, particularly those seeking data of an alleged sexual assault victim.

* * *

We agree with [the complainant] and the State that the district court acted in a way that was unauthorized by law when it denied [her] motion to quash . . . . [T]he district court ordered [the complainant] to give her cell phone to a defense-hired expert or defense counsel to review all information on the phone from the relevant time period and extract possibly relevant data and then give that data to the district court for in camera review. No law authorizes a defense-hired expert to have access to a victim's confidential information before a district court conducts in camera review. Requiring the alleged victim to disclose her cell phone data directly to a defense-hired expert would undercut her right to privacy and fail to properly balance this right with the defendant's right to present a defense . . . . And in [*State v Paradee*, 403 NW2d 640 (Minn, 1987)], we expressly held that defense counsel could not receive a victim's confidential records without those records first being reviewed in camera by the district court. [*Id*. at 869-871 (cleaned up).]

Accordingly, the Court granted the writ of prohibition requested by the state but did so "without prejudice to [the defendant's] right to request a new subpoena that conforms to the principles that are set forth today." *Id*. at 871.

In *Wadsworth*, the defendant in a sexual-assault case "served the complainant's parents each with a subpoena duces tecum directing each parent to bring the complainant's cell phone records including all text messages and data with regard to [the defendant], as well as all social media data including, but not limited to, Snapchat regarding [the defendant] for the cell phone." *Wadsworth*, 653 SW3d at 761. Following two hearings, the trial court ordered "the parents to bring the . . . cell phone for inspection and that the cell phone be presented to the court for the court's, and only the court's, in camera inspection," and "the parents to present the phone's necessary passwords and information for the court to access the Snapchat application as well as text messages." *Id*. The Texas Court of Appeals ruled that the trial court abused its discretion, reasoning:

We note again that a complaining witness has the right to privacy under the Texas Constitution. Furthermore, persons generally have a reasonable expectation of privacy in their cell phone. . . . Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on somebody's person. Cell phones have immense storage capacity and are essentially minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers. . . .

We also recognize [the defendant] has an interest in securing evidence that would be material and favorable to vindicating his due process rights. Finally, we understand the frustrations of defense counsel in attempting to conduct

investigations into their clients' cases to meet the constitutional duty to provide effective assistance of counsel. As with most competing rights, courts have to strike the right balance.

The trial court did everything it could to balance the competing interests in this case. It did so, however, in the absence of the complainant's parents, who were told by the State to not attend the hearing. As a result, the trial court was unable to fully strike the right balance, value the competing rights, or determine (1) the least intrusive means of obtaining the evidence or whether the evidence sought was available on the complainant's phone or with a service provider, (2) whether there is any evidence of spoliation; and (3) if a forensic examination was needed, whether an agent of the State or [the defendant] should be given the custody and control of the phone, as opposed to a court appointed or agreed expert.

Having concluded [the defendant] is entitled to the information he seeks, we nevertheless conclude that ordering the parents to turn over the phone and passwords for an in-camera inspection was an abuse of discretion at this stage of the proceedings based on the absence of any testimony by the complainant's parents or, at the least, a conversation with them about the least intrusive method to obtain the information from their daughter's phone. [*Id*. at 765-766 (cleaned up).]

These two decisions are consistent with *Stanaway*, in which our Supreme Court explained that, in certain cases where the defendant has satisfied a threshold showing, otherwise privileged records of a psychologist or other similar professional are subject to an *in camera* review "to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant." *Stanaway*, 446 Mich at 650.

Turning to the matter before us, there is no dispute that the prosecution must, under *Brady*, disclose any exculpatory evidence in its possession, see *Chenault*, 495 Mich at 150; produce "any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial," see MCR 6.201(A)(2); and offer defendant "an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request," see MCR 6.201(A)(6). In addition, defendant has an overall constitutional right to present a defense, see *Chambers*, 410 US at 294, which may be aided through discovery orders as well. See *Greenfield*, 271 Mich App at 448. None of these authorities, however, require the prosecution to surrender the entirety of a complainant's cellular phone data to a defendant. In other words, here, while some of the complainants' cellular phone data (e.g., specific text messages) might be subject to discovery under MCR 6.201(A)(2) as "statements[] pertaining to the case," it is virtually inconceivable that the universe of all phone data falls within MCR 6.201(A)(2), *Brady*, or other authority concerning discovery and disclosure. Accordingly, we affirm the trial court's denial of defendant's motion to compel production of the entirety of the complainants' cellular phone data.

Further, to the extent that defendant questions whether the material already provided to him by the prosecution or the sheriff's office, or both, is sufficient to protect his constitutional right to exculpatory evidence under *Brady*, his constitutional right to present a defense under

*Chambers*, and his court-rule right to discovery under MCR 6.201, we adopt the following principles outlined in *In re BH* and *Wadsworth*. First, neither defendant nor a defense expert is entitled to review any of the complainants' cellular phone data until the trial court initially conducts an *in camera* review of that data. See *In re BH*, 946 NW2d at 870-871. Only the data that is properly subject to disclosure or discovery may be provided to defendant. See *id*. See also *Stanaway*, 446 Mich at 649-650 ("[A]n in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant."). Second, the interested parties in this case, such as the complainants themselves, must be allowed an opportunity to testify or discuss the matter with the trial court about "the least intrusive method" for the trial court to identify potentially relevant material from their respective cellular phones during its *in camera* review of the data. See *Wadsworth*, 653 SW3d at 766.

Accordingly, we remand this case to the trial court to apply these principles if necessary.[6] That is, while defendant has received some cellular phone data, should defendant continue to pursue his argument that he did not receive all of the appropriate cellular phone data to which he is entitled under authorities such as *Brady*, *Chambers*, and MCR 6.201, the trial court should follow these principles to determine what, if any, additional material to provide to defendant.[7]

---

[6] Again, we emphasize that the prosecution has conceded throughout these proceedings that defendant may be entitled to some of the complainants' cellular phone data, such as text messages with potential impeachment value, so the only question before us is how to ensure that defendant receives that data while balancing the complainants' privacy rights. Compare *Wadsworth*, 653 SW3d at 765 (explaining that because the state did not challenge the trial court's finding that the defendant may be entitled to some of the complainant's cellular phone data, the disputed issue before the Court was "whether the trial court abused its discretion by ordering the parents to turn over the phone itself and passwords in order to conduct an in-camera inspection of the phone").

We leave for a future case to decide the parameters of whether and to what extent, if at all, a defendant is entitled to an *in camera* inspection of a complainant's cellular phone data. In other words, our decision should not be understood as creating a blanket right for a defendant in a sexual-assault case to have an *in camera* inspection of a complainant's cellular phone data. For example, we note the possibility that an *in camera* inspection generally could be limited to circumstances discussed in *Stanaway*, in which our Supreme Court explained that "[t]he state's interest in preserving the confidentiality of the social worker, diversion, and rape-counseling records must yield to a criminal defendant's due process right to a fair trial when the defendant can show that those records are likely to contain information necessary to his defense." *Stanaway*, 446 Mich at 679-680. We also note the unusual procedural posture of this case, in which the police now have possession of the complainants' cellular phone data, thereby implicating *Brady*. See *Chenault*, 495 Mich at 150. In a future case, following the principles outlined in our opinion, a complainant need not surrender his or her cellular phone data to the police in the first instance.

[7] The parties' dispute on appeal concerns the complainants' cellular phone data. However, there was brief testimony at the evidentiary hearing indicating that the sheriff's office also has

## B. THERAPY RECORDS

Defendant next argues that the trial court abused its discretion when it denied his motion to compel production of one complainant's therapy records because he had demonstrated a good-faith belief that the records contain information necessary for his defense. Further, defendant argues that the prosecution failed to satisfy its initial burden of proving that the therapy records in question are subject to an established statutory privilege because the prosecution "never established the therapist's licensure." We disagree with these arguments.

Initially, we note that at the hearing concerning discovery of the therapy records, defense counsel acknowledged that the therapy records were privileged. In particular, defense counsel stated that "I would agree these would constitute privilege under 6.201," and argued that the trial court should conduct an *in camera* review of those records under the principles outlined in *Stanaway* and MCR 6.201(C)(2). Thus, because defendant affirmatively acknowledged that the therapy records were privileged, he has waived any appellate argument on this issue since "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted).

Defendant argues that the trial court nonetheless abused its discretion when it refused to conduct an *in camera* review of the therapy records. However, we agree with the trial court that defendant did not satisfy his burden of demonstrating "a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense[.]" MCR 6.201(C)(2). Such a showing must be "more than a generalized assertion that the counseling records may contain evidence useful for impeachment on cross-examination." *Stanaway*, 446 Mich at 681. And "disclosure [of privileged information] should not occur when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *People v Davis-Christian*, 316 Mich App 204, 208; 891 NW2d 250 (2016) (quotation marks and citations omitted). "A defendant is fishing for information when he or she relies on generalized assertions and fails to state any specific articulable fact that indicates the privileged records are needed to prepare a defense." *Id.* (quotation marks and citation omitted).

Here, defense counsel's request to obtain the therapy records is, essentially, a fishing expedition. Defense counsel elicited testimony from the complainant that he had attended therapy, both inpatient and outpatient. However, there is nothing in the record to show that the complainant ever discussed the alleged sexual assaults with a therapist. In fact, while his testimony is a bit ambiguous in this regard, the complainant indicated that he only disclosed the alleged sexual assaults to his family and later to the police. Further, while the complainant admitted at the preliminary examination that he told the investigating detective that he was having trouble distinguishing reality from fantasy, he later clarified that he had no doubt that defendant sexually

---

possession of another witness's cellular phone data. If so, the same principles outlined in our opinion apply with equal force to that data as well.

assaulted him and that his statements to the detective had nothing to do with the case or the allegations against defendant.

Simply put, to satisfy *Stanaway* and MCR 6.201(C)(2), a defendant should "articulate[] a need to ascertain a specific piece of evidence to prove a fact material to his defense . . . ." *Davis-Christian*, 316 Mich App at 212. In this case, defendant has not identified a specific piece of evidence that he expects to find in the therapy records. Rather, he simply asserts that the therapy records are likely to aid his defense by undermining the credibility of the complainant in light of the complainant's presumptive mental-health issues. Thus, the trial court did not err when it found that defendant failed to establish the required factual predicate to justify an *in camera* review of the records, and the trial court did not abuse its discretion when it denied his motion in that regard.

### III. CONCLUSION

We affirm the trial court to the extent that it declined to order the prosecution to surrender the complainants' entire cellular phone data to defendant. We also affirm the trial court's denial of defendant's motion for an *in camera* review of the one complainant's therapy records under *Stanaway* and MCR 6.201(C)(2). However, to the extent that defendant seeks additional material from the complainants' cellular phone data, we remand this case to the trial court to follow the principles outlined in our opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Michael F. Gadola
/s/ Anica Letica

-10-